**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VICTORIA HAMILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO:   25-1156** |
| **MASTEC NORTH AMERICA, INC. ET AL** | **SECTION: "H" (4)** |

## ORDER

Before the Court is Defendants' **Motion to Compel Signed Medical Authorizations and AMO without Restrictions (R. Doc. 23)** filed by Defendants Mastec North America, Inc. ("Master") and Landon Ronnie Foster ("Foster"), seeking to compel Plaintiff Victoria Hamilton ("Hamilton") to execute medical authorizations regarding her mental health treatment and undergo an additional medical opinion[1] ("AMO") of an x-ray of her left knee to be performed by Dr. Luis Espinoza without restrictions. The Motion is opposed. R. Doc. 25. The Motion was heard on June 3, 2026.

### I.     Background

#### A.  Factual Background

This personal injury litigation arises out of a September 12, 2024, automobile accident where Foster, operating a commercial truck owned by Mastec, allegedly collided with Plaintiff Victoria Hamilton's ("Hamilton") vehicle[2] traveling southbound on US Highway 90B in Orleans Parish. R. Doc. 1-2 at 2. Hamilton sustained injuries and filed suit in state court against Foster for failure to exercise proper care in operating the truck. *Id.* at 3. Hamilton also seeks to hold Mastec vicariously liable because Foster was allegedly acting within the scope of his employment and

---

[1] Additional Medical Opinion is a Louisiana state term. *See* La. C.C.P. Art. 1464. In federal court, this type of procedure is called an Independent Medical Examination which courts can compel pursuant to Rule 35 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 35.
[2] 1998 Toyota Camry. R. Doc. 1-2 at 4.

asserts an independent claim against Mastec for failing to properly hire, train, and supervise Foster. *Id.* Hamilton seeks damages for past and future physical pain and suffering, past and future emotional and mental anguish, past and future loss of enjoyment of life, medical expenses, and lost wages. *Id.* at 3-4. The case was removed to this Court on June 6, 2025. *See* R. Doc. 1.

### B. Motion to Compel

Defendants filed the subject motion seeking to compel Plaintiff to execute medical authorizations regarding her mental health treatment[3] and undergo an additional medical opinion (AMO) by Defendants' physician, Dr. Luis Espinoza, to conduct an x-ray of her knee.[4] R. Doc. 23 at 1. Before removal, Defendant claims that they sent discovery requests to Plaintiff on May 27, 2025, which included a packet of authorizations for her to sign. R. Doc. 23-1 at 3; R. Doc. 23-4. Following removal, Defendants maintain that Plaintiff objected to the discovery requests on January 6, 2026, on the basis that the forms do not comply with the Louisiana Code of Civil Procedure.[5]" R. Doc. 23-1 at 3; R. Doc. 23-5 at 22.

During Plaintiff's deposition on March 6, 2026, Plaintiff testified that she suffered physical injuries to her left knee, lower back and neurological conditions such as worsening depression, headaches, PTSD, and insomnia as a result of the accident. R. Doc. 23-1 at 2; R. Doc. 23-3 at 12. As to her prior medical history, Plaintiff testified that she had treatment for depression, suicide, insomnia, and a longstanding PTSD diagnosis in Iowa and Nebraska. *Id.* at 3; R. Doc. 23-3 at 12-14. Defendants contend that Plaintiff could not name any facilities or providers. *Id*; R. Doc. 23-3 at 6. During the Rule 37 conference on March 24, 2026, Defendants contend that they again requested blanket authorizations from Plaintiff to have her fill in the providers' information so

---

[3] Defendants specifically seek information documenting Plaintiff's history of psychiatric and/or neurological conditions and treatment. R. Doc. 23-1 at 1

[4] The examination was to be held April 24, 2026, at 11:00am. R. Doc. 23-1 at 4.

[5] *See* Request for Production No. 27. R. Doc. 23-5 at 22.

Defendants can track down the records. *Id.* Defendants maintain that Plaintiff's counsel refused to provide authorizations unless a provider was identified first. *Id.* Defendants also maintain that the parties were unable to reach an agreement. *Id.* at 4. Defendants contend that information related to her prior physical and mental condition are relevant to provide the causation element of her negligence claims. R. Doc. 23-1 at 1. Defendants contend Plaintiff's refusals have caused unnecessary delay which may affect the ability of Defendants to meet their upcoming expert deadline on July 2, 2026.[6] R. Doc. 23-1 at 2.

Plaintiff first notes that Plaintiff has lived in Louisiana for over twenty years since 2006. R. Doc. 25 at 5. From birth in 1977 to 2006, Plaintiff contends that she lived in Nebraska and Iowa. *Id.* Plaintiff further contends she suffered PTSD from six to sixteen and was last treated for PTSD since 2015 in Louisiana; her provider which was identified to Defendant. *Id.* As for her depression, Plaintiff contends that she has been seeing the same provider, Dr. Madeline Cozad in Louisiana, for the past eight years and also has identified her to Defendant as her provider. *Id.*

Plaintiff further contends that Defendants have identified at least 18 of her past medical providers, and that Defendants have received approximately 5,000 pages of medical records dating back at least a decade through subpoenas. *Id.* at 2. Plaintiff argues that the requirement that she execute blanket medical authorizations violations the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). R. Doc. 25 at 1. Plaintiff also notes that the authorizations are unlimited in time and scope. *Id.* Nevertheless, Plaintiff contends that she agreed to execute valid authorizations addressed to specific providers by Defendants from records that do not pre-date 2006. *Id.* at 6.

---

[6] On June 26, 2026, Defendants filed a Motion to Continue Trial and Pretrial Deadlines (R. Doc. 29). R. Doc. 30.

Plaintiff further maintains that she agreed to submit to a medical examination of her knee by Dr. Luis Espinoza and three other IMEs requested by Defendants. R. Doc. 25 at 2. Plaintiff only raises a limited objections that no additional x-rays can be taken because prior x-rays have already been taken, and those are the same x-rays that Plaintiff's treating physician is relying upon. *Id.*

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery to include "any non-privileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) further specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discovered." *Id.* Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 34 provides that a party may request the production of "any designated documents or electronically stored information" or "any designated tangible things." Fed. R. Civ. P. 34(a)(1). For each item or category, a "response must . . . state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34 (b)(2)(B).

Rule 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Fed. R. Civ. P. 35(a)(1). The court may issue such an

4

order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *See* Fed. R. Civ. P. 35(2).

Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder,* 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119.

"The decision as to whether or not to order an independent medical examination under Rule 35(a) rests in the court's sound discretion." *Glaze v. Bud's Boat Rental, Inc.,* No. 93–1334, 1993 WL 441890, at *1 (E.D. La. Oct. 21, 1993) (citing *Cola–Cola Bottling v. Torres,* 255 F.2d 149 (5th Cir.1958)). Furthermore, "[a]lthough Rule 35 examinations may be ordered 'only on motion for good cause shown,' and use of the rule to compel such examinations is not unfettered, Rule 35(a) generally has been construed liberally in favor of granting discovery." *In re Bordelon Marine, Inc.*, No. 11-1473, 2012 WL 1902576, at *2 (E.D. La. May 25, 2012) (*citing Grossie v. Fla. Marine Transporters, Inc.,* No. 04–0699, 2006 WL 2547047, at *2 (W.D. La. Aug. 31, 2006).

### III.   <u>Analysis</u>

### A.  Medical Authorizations

Defendants first seek information documenting Plaintiff's history of psychiatric and/or neurological conditions and treatment because she puts her mental condition in controversy. R.

Doc. 23-1 at 5. Defendants point out that Plaintiff testified in her deposition that her longstanding PTSD and depression worsened because of the accident. *Id.* Defendants specifically seek Plaintiff's medical records from physicians that treated her medical condition while she lived in Nebraska and Iowa. *Id.* at 6. Defendants maintain that Plaintiff has refused to execute HIPPA authorizations and has not attempted to locate her providers from Nebraska and Iowa. *Id.* Defendants further maintain that the medical authorizations are blank only because Plaintiff cannot recall the name of her providers. *Id.* at 7.

Plaintiff contends that she agreed to execute valid authorizations addressed to specific providers by Defendants from records that do not pre-date 2006. R. Doc. 25 at 6. Plaintiff maintains these records include those that Defendants seek from Iowa and Nebraska. *Id.* at 5. Plaintiff notes that she has lived in Louisiana for over twenty years since 2006. R. Doc. 25 at 5. Plaintiff contends she was last treated for PTSD in 2015 in Louisiana, and that her provider was identified for the Defendants. *Id.* As for her depression, Plaintiff contends that she has been seeing the same provider, Dr. Madeline Cozad, for the past eight years and also has been identified Defendant. *Id.* Plaintiff further contends that Defendants have identified at least 18 of her past medical providers, and that Defendants have received approximately 5,000 pages of medical records dating back at least a decade through subpoenas. *Id.* at 2.

When a Plaintiff puts her physical or mental condition at issue in the case, her medical records are subject to discovery. *See Tijerina v. Guerra*, No. 7:19-cv-285, 2020 WL 1663181, at *10 (S.D. Tex. Apr. 1, 2020). However, the request for such records must be within the boundaries provided by Rule 26(b)(1), that it must be proportional to the needs of the case. *See id*; Fed. R. Civ. P. 26(b)(1). Courts have routinely denied blanket authorizations for medical records that are unlimited in time and scope. *See Tijerina*, Rogers v. Orleans Parish Sheriff's Office, No. 22-5303,

2025 WL 3760764 (E.D. La. Dec. 30, 2025) , *Goodno v. Endurance Am. Speciality Ins. Co.*, No. 19-11221, 2020 WL 13551903 (E.D. La. Sep. 2. 2020).

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") also provides that a valid authorization form must contain the following:

> "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion"; (2) "[t]he name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure"; (3) "[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure"; (4) "[a] description of each purpose of the requested use or disclosure"; (5) "[a]n expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure"; and (6) the "[s]ignature of the individual and date." 45 C.F.R. 164.508(c)(1)(i)-(iv).

A form that does not contain all of these elements is facially invalid.

Defendants represented during oral argument that they are not seeking the contents of Plaintiff's psychiatric records through the requested authorizations. Rather, Defendants seek to conduct a medical canvas solely to identify Plaintiff's medical providers and confirm whether she received treatment from those providers. Defendants further explained that they intend to use a third party to conduct the search and need Plaintiff's authorization to trigger responses from the potential providers.

The Court finds that this limited request is distinguishable from an overbroad request for unrestricted access to Plaintiff's medical records. Defendants seek the authorizations only to identify providers and confirm treatment, not to obtain the substance of those records. Therefore, to the extent that the requested authorizations are limited to conducting a medical canvas for those purposes, the request is narrowly tailored and proportional to the needs of the case.

### B. Independent Medical Examination

As an initial matter, the term "additional medical opinion" noted by Defendant is a Louisiana state term and is defined as an "independent medical examination" in federal court.

*Compare* La. C.C.P. Art. 1464 and Fed. R. Civ. P. 35. Because the case was removed to federal court jurisdiction, federal law and the federal rules of civil procedure govern the case, which in this context is Rule 35. *See Garon v. Ill. Cent. R.R. Co.*, No. 24-2599, 2026 WL 32071, at *1 (E.D. La. Jan. 6, 2026) (applying Rule 35 instead of La. C.C.P. Art. 1464 to a party's request for a blood sampling of the plaintiff).

Defendants contend that Plaintiff placed her physical condition at issue by claiming that she suffered injuries to her knee from the accident. R. Doc. 23-1 at 8. Defendants specifically note that Plaintiff testified in her deposition that she would seek future treatment for her knee. R. Doc. 23-3 at 11-12. Defendants further represented in oral argument that the Plaintiff designated the treating physician for her knee on her expert designations. Defendants therefore contend that it she puts her knee at issue in the lawsuit and should be required to undergo an independent medical examination by Defendants' chosen physician Dr. Luis Espinoza. *Id.*

Plaintiff does not object to the whole IME. R. Doc. 25. Plaintiff objects only to the performance of additional x-rays because they have already been taken following the accident in October 2024 and will be relied upon by her treating physician. *Id.* at 16-18. During the hearing, however, Plaintiff's counsel indicated that she is no longer seeking damages for future treatment at this time despite her representation in the deposition and the expert designation. Plaintiff's counsel still was unsure whether she would change her position. The Court indicated that, if Plaintiff is not seeking future damages or treatment for her knee, the need for an independent medical examination would be obviated.

Plaintiff's counsel then represented that Plaintiff's life care plan does not include future medical or rehabilitative support for her knee. Defendant's counsel indicated he had no objection to the Plaintiff's representation so long as her position remains that she is not seeking future

treatment for the knee. The Court informed the parties that if the circumstances change, Plaintiff's counsel should promptly notify counsel of such change. Because there is no longer a need for an independent medical examination at this time, the request to compel an IME is denied.

## IV.      Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Compel Signed Medical Authorizations and AMO Without Restrictions (R. Doc. 23)** is **GRANTED in PART** and **DENIED in Part**.

**IT IS GRANTED** to the extent that it seeks to compel Plaintiff to execute authorizations for Defendants to conduct a medical canvas for the limited purpose of identifying her medical providers.

**IT IS DENIED** to the extent that it seeks to compel Plaintiff to submit to an independent medical examination for the reasons assigned above.

New Orleans, Louisiana, this 30th day of June 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

9