**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VICTORIA HAMILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 2:25-cv-1156** |
| **MASTEC NORTH AMERICA, INC., and LANDON RONNIE FOSTER** | **SECTION: "H" (4)** |

**ORDER & REASONS**

Before the Court is a **Motion to Compel (R. Doc. 46)** filed by the Plaintiff seeking to compel the Defendants to respond fully and adequately to Plaintiff's Request for Production of Documents, particularly production of MasTec's Incident Report and Mr. Foster's Termination Records, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. Plaintiff further requests that Defendants be cast with reasonable expenses associated with the bringing of this Motion including attorneys' fees. The motion is opposed. R. Doc. 49. The motion was heard by oral argument on August 19, 2026.

## I. Background

### A) Factual Background

This case arises from a lane change motor vehicle accident that occurred on September 12, 2024, on US Highway 90 at the Tchoupitoulas Street exit in New Orleans, Louisiana. Plaintiff Victoria Hamilton ("Hamilton") was driving a 1998 Toyota Camry in the right lane of Highway 90B. At the same time, Defendant commercial driver, Landon Ronnie Foster ("Foster"), was operating a commercial truck/big rig for his employer, MasTec North America, Inc. ("MasTec"), in the middle lane of Highway 90B.

Plaintiff alleges negligence against both Foster and MasTec. First, Hamilton alleges that Foster negligently moved his commercial big rig from the middle lane into the right lane that was already occupied by Hamilton, crashing the big rig into Hamilton's small Camry. Hamilton further alleges that the big rig's violent impact caused her Camry to spin multiple times, throwing open her driver's-side door, substantially damaging the car, and seriously injuring her.

Second, Hamilton alleges that MasTec is vicariously liable for Foster's negligence because at the time of the crash, Foster was acting in the course and scope of his employment with MasTec while operating MasTec's commercial big rig. Third, Hamilton alleges that MasTec was negligent in its hiring, training, and supervision of Foster.

Foster was terminated from his employment with MasTec within days after the accident. MasTec claims, and Foster has testified in his deposition, that Foster's employment was terminated for repetitive tardiness—not at all due to the accident that is the subject matter of this suit.

Hamilton filed suit in April of 2025 in the 24th Judicial District Court for the Parish of Jefferson, Louisiana. On June 6, 2025, this case was removed to the U.S. District Court for the Eastern District of Louisiana based on diversity jurisdiction.

**B) Subject Motion to Compel**

Along with her Petition, Plaintiff propounded initial discovery upon the Defendants. R. Doc. 46-1. Relevant to the instant motion are Requests for Production Nos. 2, 12, 15, and 16, which Plaintiff contends contemplates production of MasTec's incident report and Foster's termination records.[1]

[1] Request for Production No. 2 seeks production of all materials which may be introduced by Defendants as evidence at trial. Request for Production No. 12 seeks all documents in MasTec's possession related to Defendant Foster in his capacity as an employee of MasTec, including files on his employment, personnel, risk management, safety, training, and any documents related to Plaintiff's accident. Request for Production No. 15 seeks any records of MasTec's investigation into the accident, including whether the crash was preventable by Foster. Request for Production No. 16 seeks all documents created by MasTec's incident review board concerning "chargeability of the incident."

On January 6, 2026, Defendants responded to discovery. R. Doc. 46-2. Defendants produced Foster's driver's license, portions of Foster's personnel file, training records, and general training materials, but objected to production of anything further as overbroad and irrelevant to the instant litigation. *Id.* at 15, 17, 18-19. Defendants objected to production of any materials related to MasTec's internal investigation into the accident by claiming attorney-client privilege and protection under the work-product doctrine. *Id.* at 20. Defendants also objected to production of any materials concerning "chargeability of the incident" as vague, overbroad, irrelevant, duplicative, and privileged. *Id.*

Defendants produced a Privilege Log. R. Doc. 46-4. The privilege log noted Defendants' objection to production of Foster's termination records on relevance grounds. The privilege log noted Defendants' objection to production of MasTec's incident report based on "Attorney-Client Privilege and Work-Product, prepared in anticipation of litigation."

On February 26, 2026, the Defendants supplemented their discovery responses. R. Doc. 46-3. Defendants produced portions of Foster's driver's file, but no termination records or incident report. *Id.* Defendants produced an Amended Privilege Log which did not change their claims for privilege over the termination records or incident report.

Plaintiff believes that the Defendants' responses to Requests for Production Nos. 2, 12, 15, and 16 are insufficient because they contain boilerplate objections and privilege claims. Plaintiff believes that the Defendants' responses should have included production of two documents: MasTec's internal Accident Review Report ("incident report") and Mr. Foster's termination records.

The Defendants maintained consistent objections that the disputed Requests seek irrelevant and privileged information—specifically, that the incident report is protected by the work-product

doctrine and attorney-client privilege, and that Foster's termination records are irrelevant to this suit. The parties conducted a Rule 37 Conference on February 9, 2026, to resolve the dispute, but were unsuccessful. R. Doc. 46-5.

On July 31, 2026, the Plaintiff filed the instant Motion. R. Doc. 46. Plaintiff contends that Requests for Production Nos. 2, 12, 15, and 16 include production of MasTec's incident report and Foster's termination records, and that the Defendants are improperly withholding these relevant and discoverable documents based on insufficient boilerplate objections.

Plaintiff argues that MasTec's incident report is not protected by either the work-product doctrine or the attorney-client privilege because MasTec creates incident reports within the ordinary course of its business, as established by MasTec's training, policy, and procedure materials. R. Doc. 46-7. Further, Plaintiff argues that because Foster's negligence is directly at issue in this case, which necessarily includes the underlying facts and circumstances of the accident, information within the incident report and relative to Foster's employment are relevant to the subject matter of this dispute and are therefore discoverable.

On August 11, 2026, Defendants both opposed the motion. R. Doc. 49. Defendants counter that none of the disputed Requests for Production explicitly seek MasTec's "Accident Review Report", incident report, or "Driver's Termination Records." Further, the Defendants purport that the incident report is not discoverable because it is protected by the work-product doctrine and the attorney-client privilege. Defendants argue that Foster's termination records are not discoverable because such information is not relevant to the subject matter of this suit or Plaintiff's claims because Foster was terminated for tardiness, not for his involvement in the disputed accident. Defendants contend that Plaintiff has no need for Foster's termination records because Defendants have already provided the reason for Foster's termination via deposition testimony.

On August 14, 2026, Plaintiff filed a Reply Memorandum. R. Doc. 50. Plaintiff reiterates her arguments regarding relevance but emphasizes that Defendants proffer no direct evidence, such as affidavits, to substantiate their claims of attorney-client privilege and protection under the work-product doctrine. *Id.*

The Court reviewed the disputed materials *in camera*. On August 19, 2026, the instant motion was heard by oral argument.

## II. Standard of Review

### A) Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure provides that unless otherwise limited by the court, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors such as the parties' access to the information and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).

However, the court must limit discovery if it determines that the discovery is duplicative. FED. R. CIV. P. 26(b)(2)(C). Also, it may be limited if the discovery can be obtained from some other source that is more convenient, or if the proposed discovery is outside the scope of Rule 26(b)(1). *Id.*

### B) Privileged Information

Rule 26 protects against the discovery of privileged information. *See* FED. R. CIV. P. 26(b)(1). A party who invokes a privilege in response to a discovery request has the burden of proving the privilege's applicability. *Meador v. Starr Indem. & Liab. Co.*, No. 19-2378, 2020 WL 8256370, at *3 (E.D. La. Sept. 1, 2020) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

**i) Work-Product Doctrine**

The work-product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . or agent)." FED. R. CIV. P. 26(b)(3)(A). For documents or things to be considered work product, litigation is not required to be imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *U.S. v. Davies*, 636 F.2d 1028, 1040 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981).

The factors considered to determine the primary purpose for creating a document are "the retention of counsel and his involvement in the generation of the document." *Canter v. Cleco Corp.*, No. 08-0343, 2009 WL 902435, at *3 (E.D. La. Mar. 30, 2009) (internal citations omitted). Also, the court should consider "whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Id.*

Materials prepared in the ordinary course of business are not considered to be prepared in anticipation of litigation. Therefore, such materials are excluded from the work-product doctrine. *Meador*, 2020 WL 8256370, at *4 (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); additional citation omitted).

The involvement of an attorney is not dispositive, but it "is a highly relevant factor . . . making materials more likely to have been prepared in anticipation of litigation." *Fieldwood Energy, L.L.C. v. Diamond Servs. Corp.*, No. 14-650, 2015 WL 1415501, at *2 (E.D. La. Mar. 27, 2015) (quoting *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000)).

**ii) Attorney-Client Privilege**

In a federal civil action invoking diversity jurisdiction, state law—in this case Louisiana—provides the applicable law of attorney-client privilege. *See* FED. R. EVID. 501; LA. CODE EVID. ANN. art. 506.

Under Louisiana law, the party asserting a claim of attorney-client privilege must establish: (1) the holder of the privilege is or sought to become a client; (2) the communication was made to an attorney or his subordinate in a professional capacity; (3) the communication was made outside the presence of strangers; (4) the communication was made to obtain a legal opinion or services; and (5) the privilege has not been waived. *Meador*, 2020 WL 8256370, at *3 (citing *Cacamo v. Liberty Mut. Fire Ins. Co.*, 798 So.2d 1210, 1216 (La. App. 4th Cir. 2001)).

## III. Analysis

Plaintiff seeks to compel the Defendants to produce MasTec's incident report and Foster's termination records on the grounds that they are discoverable because they contain relevant and nonprivileged information. Defendants object to Plaintiff's motion, arguing that the incident report is protected by the work-product doctrine and the attorney-client privilege, and that Foster's termination records are irrelevant because the reason for his termination is unrelated to the subject matter of this suit, and that Plaintiff has no need for the termination records because Defendants have provided the reason for Foster's termination via Foster's deposition testimony.

### A) MasTec's Incident Report

**i) Work-Product Doctrine**

Plaintiff contends that MasTec's incident report is relevant and therefore discoverable because MasTec's incident report likely contains evidence of the cause of the accident, which Plaintiff's contention bears directly on the question of Defendants' negligence.

Defendants object by asserting that the incident report is protected by the work product doctrine. Defendants conceded at oral argument that incident reports are routine but contend that *this* incident report was only created after the claim was classified as a "CAT" matter, when litigation was considered probable and corporate counsel was engaged to direct the review.

In response, Plaintiff argues that the incident report is not work product because it is created in the ordinary course of MasTec's business, as evidenced by its training, policy, and procedure materials. Plaintiff points to a training video, which MasTec produced in response to discovery requests, which instructs MasTec employees to investigate *all* incidents, including "near misses." The training video further provides that documentation and investigations are "completed for reporting purposes" and are "used to notify management of the facts and circumstances surrounding the incident."

The Court has reviewed the MasTec incident report *in camera*. First, the instructions listed on the "Motor Vehicle Incident Report" form provide that the report is to be completed by the employee, who is then required to report the incident to their supervisor "as soon as possible, but at least before the end of the employee's scheduled work day or shift." Then, the supervisor must "notify ESIS and Safety Department." The incident report documenting this accident does not identify the employee that completed the form. Thus, nowhere does the form indicate that the report is created at the instruction of counsel or by or for counsel.

Relevant here, the Court previously held in *Canter v. Cleco Corp.*, No. 08-0343, 2009 WL 902435, at *2, 3 (E.D. La. Mar. 30, 2009), that a party's bare assertion that an incident report was

created "under orders of the legal department" was insufficient, without more, to prove that the incident report was created in anticipation of litigation. There, an individual alleged negligence against a city and an electrical corporation because he was electrocuted by an energized wire. *Id.* at *1. The individual requested the electrical corporation's incident report, but the corporation refused to produce the report by asserting that it was privileged. *Id.*

However, the corporation was unable to produce any direct evidence that the report was privileged, and one of the employees who completed an incident report testified that it "was standard operating procedure (SOP) to get out a report after he responds to a call regarding an outage or a wire down." *Id.* at *2, 3. Another employee testified that he did the report "to his supervisor"—not legal counsel. *Id.* The court reasoned that because it did not appear that either of the reporting employees "were aware that their handwritten reports were prepared at the request of [the corporation's] legal department," there was no evidence that the report was created by or for legal counsel, let alone with the primary motivating purpose of aiding in future litigation. *Id.* at *3, 4. The incident report was therefore discoverable. *Id.* at *4.

Defendants offer only a bare assertion that the incident report was created once "corporate counsel was engaged to direct the review [of the accident] for the purpose of providing legal advice and preparing for the anticipated claim." R. Doc. 49 at 10. Like those in *Canter*, the Defendants offer no evidence of counsel's involvement in the creation of the incident report. Defendants provide no record of communication in which legal counsel directed anyone at MasTec to create the incident report. Further, Defendants do not even provide the identity of the legal counsel who allegedly gave the instruction.

Further, the incident form's instructions provide that all incidents must be reported, not just those which may justify anticipating litigation. The categories of information sought by the report

form are general, including location of the accident, contact information, general facts about the accident itself, and company vehicle details. Most general details about the incident are documented by checking boxes on the form. Defendants do not produce any evidence that the designation of this accident on the report form as "Extreme/CAT Claim" caused it to change its conduct from the procedure followed for reporting *all* motor vehicle incidents. Further, Defendants' routine self-reporting of the severity of the incident and whether it was preventable are not protected by the work-product doctrine when there is no direct evidence that distinguishes the "CAT" claim from all else.

This conclusion is further substantiated by MasTec's training video, which provides that documentation of incidents is completed for "reporting purposes." This supports Plaintiff's argument that the incident report was created in the ordinary course of business, not in anticipation of litigation.

Finally, the incident report form contains a flag which reads "Confidential Report of Incident Privileged, Confidential and/or Proprietary (Attorney-Client Communication and Attorney Work-Product)." This flag is not evidence of counsel's involvement in the creation of the report and therefore does not confer privileged status.

Here, Defendants offer no direct evidence to justify their assertion of protection under the work-product doctrine. This, along with Plaintiff's offer that the training video is direct evidence that MasTec produces incident reports in the ordinary course of its business, which is supported by the incident report reviewed *in camera* by the Court, Defendants have not satisfied their burden of proof to be entitled to protection under the work-product doctrine. Defendants therefore must produce the incident report.

**ii) Attorney-Client Privilege**

Both the Plaintiff and the Defendants primarily give their attention to arguing the issue of whether the work-product doctrine applies to MasTec's incident report. In contrast, the parties do not argue at length as to whether the MasTec incident report is entitled to protection by the attorney-client privilege.

Defendants offer no direct evidence that the incident report itself is a confidential communication made for the purpose of obtaining legal services. The incident report is not directed to counsel, does not contain legal counsel's name, and Defendants do not even offer an email communication in which the incident report was transmitted to counsel. Further, it appears that the MasTec incident report was prepared for purposes other than for obtaining legal advice, such as to inform management of incidents and to ensure proper safety protocols.

And as previously mentioned, the statement at the bottom of the incident report designating privilege does not serve as direct evidence that the incident repot is protected by the attorney-client privilege.

Thus, Defendants have failed to satisfy their burden of proof to establish entitlement to the attorney-client privilege. Defendants must produce the incident report to Plaintiff.

**B) Mr. Foster's Termination Records**

Plaintiff argues that Mr. Foster's termination records are relevant to this suit because Foster's negligence is directly at issue in this case, which necessarily includes information related to Foster's termination. Defendants argue that Foster's termination records are irrelevant and should not be produced because discovery would be duplicative and because Plaintiff has been provided with the reason for Foster's termination via Foster's deposition testimony.

After conducting an *in camera* review, the Court finds that the termination records contain no new information. Plaintiff has been provided with the reason for Foster's termination via Foster's deposition testimony, and the termination records confirm that reason. Any order for Defendants to produce the termination records would therefore be duplicative and unnecessary. Defendants are not required to produce Foster's termination records to Plaintiff.

**C) Motion to Compel & Reasonable Expenses**

Plaintiff seeks reasonable expenses, including attorneys' fees, associated with bringing the instant motion. Defendants object on the grounds that granting fees would be too punitive.

Rule 37 provides that "a party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). If the motion is granted in part and denied in part, the court "may, after giving reasonable opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

In exercising its sound discretion under Rule 37(a)(5)(C), the Court finds that each party should bear their own costs for bringing and defending the instant motion. The motion and opposition were submitted with good cause and the matter resulted in a split decision. Therefore, Plaintiff's request for reasonable expenses and attorneys' fees is denied.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Compel (R. Doc. 46)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the instant motion is **GRANTED** insofar as the MasTec Incident Report is not privileged and must be produced to Plaintiff.

**IT IS FURTHER ORDERED** that the instant motion is **DENIED** insofar as Mr. Foster's termination records are not relevant and are therefore not required to be produced.

**IT IS FURTHER ORDERED** that payment of reasonable expenses, including attorneys' fees, is **DENIED** pursuant to Rule 37(a)(5)(C).

New Orleans, Louisiana, this 7th day of October 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**